IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY R. TURNER,

    Plaintiff,                       No. CIV S-02-0543 MCE PAN P

    vs.

CHERYL PLILER, et al.,           <u>ORDER AND</u>

    Defendants.[1]              <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prison inmate proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants violated his Eighth Amendment right to medical care. On July 27, 2005, defendant Dixon filed a motion for summary judgment. After granting plaintiff an extension of time to file an opposition, the court

---

[1] Defendant Vernon was dismissed by order filed July 7, 2005. The court recommended dismissal of defendants Pliler and Vancor by findings and recommendations filed April 10, 2003, finding that plaintiff's submission of service forms for only defendants Dixon and Vernon constituted plaintiff's consent to voluntarily dismiss defendants Pliler and Vancor. Plaintiff filed objections and it appears the service order and findings and recommendations were vacated by an order filed May 30, 2003. Plaintiff filed an amended complaint on July 8, 2003, again naming all four defendants. However, service of process was not accomplished on defendants Pliler and Vancor and it does not appear the court screened the amended complaint under 28 U.S.C. § 1915(e)(2). Accordingly, in addition to ruling on the pending motion for summary judgment as to defendant Dixon, this court has addressed defendants Pliler and Vance in section II, *infra*.

1

issued findings and recommendations recommending the action be dismissed.  On April 10, 2006, plaintiff filed an opposition.  Good cause appearing, the March 17, 2006 findings and recommendations will be vacated.

I. <u>Defendant Dixon's Motion for Summary Judgment</u>

In his July 8, 2003 amended complaint, plaintiff alleges under penalty of perjury that on August 23, 2001, defendant Vernon intentionally gave plaintiff wrong medication.  Defendant Vernon was granted summary judgment on July 7, 2005.  Plaintiff alleges defendant Dixon deliberately delayed and/or failed to provide appropriate medical care and conspired with defendant Vernon to cover up defendant Vernon's error.  Specifically, plaintiff alleges that defendant Dixon dosed plaintiff with Benadryl in an effort to conceal the error, failed to order plaintiff's stomach pumped, and injected plaintiff with a "knockout" drug, none of which resolved the pain he was suffering.

## UNDISPUTED FACTS

Defendant Tyrone Dixon was a Registered Nurse employed by the California Department of Corrections at CSP-Sacramento.  Defendant Dixon was on duty in the emergency medical clinic of CSP on August 23, 2001.

Defendant Dixon contacted the Psychiatric Physician on Duty; the physician instructed defendant Dixon to give plaintiff Benadryl.

Defendant Dixon gave plaintiff Benadryl by mouth.  Defendant Dixon did not have plaintiff's stomach pumped.

Defendant Dixon injected plaintiff with a syringe; defendant Dixon declares the syringe contained Benadryl.  Plaintiff contends the syringe contained an "unknown knock-out drug that made plaintiff drowsy." (Amended Complaint at 12.)  Plaintiff contends the injection was intended to make plaintiff forget about what happened. (<u>Id.</u>)

Administering Benadryl was the usual and customary treatment under these circumstances. (Dixon Decl. at 2.)

After giving plaintiff the injection, defendant Dixon "had no further involvement in providing him medical care or treatment." (Dixon Decl. at 3.)

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
>
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 US. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

1  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

2        On April 7, 2003, the court advised plaintiff of the requirements for opposing a
3  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154
4  F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v.
5  Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

## ANALYSIS

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Such a claim has two elements; "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991).

"The government has an obligation under the Eighth Amendment to provide medical care for those whom it punishes by incarceration." Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000). "But not every breach of that duty is of constitutional proportions. In order to violate the Eighth Amendment proscription against cruel and unusual punishment, there must be a 'deliberate indifference to serious medical needs of prisoners.'" Lopez, 203 F.3d at 1131 (quoting Estelle, 429 U.S. at 104.)

A medical need is "serious" "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, at 1059 (quoting Estelle, 429 U.S. at 104). Examples of indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." McGuckin, 974 F.2d at 1059-60.

Plaintiff must also allege facts that defendant responded to the serious medical need with deliberate indifference. Deliberate indifference may be shown "when prison officials

deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. U.S., 838 F.2d 390, 394 (9th Cir. 1988). Where the claim is based on a delay in treatment, "a prisoner can make 'no claim for deliberate medical indifference unless the denial was harmful.'" McGuckin at 1060 (quoting Shapley v. Nevada Board of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)(per curiam)). The harm caused by the delay need not, however, be "substantial." McGuckin at 1060 (citing Wood v. Housewright, 900 F.2d 1332, 1339-40 (9th Cir. 1990); also citing Hudson v. McMillian, 503 U.S. 1, 5-10).

In the instant case, plaintiff contends defendant Dixon administered the oral Benadryl while plaintiff was in an administrative segregation cell, then directed Correctional Officer Churray to take plaintiff to the A-Facility "ER" Clinic. (Amended Complaint at 11.) Defendant Dixon contends plaintiff presented at the A-Facility "ER" Clinic complaining of side effects or complications experienced after taking psychiatric medications.

Defendant Dixon contends he administered the oral Benadryl after consulting the physician by phone; plaintiff contends defendant Dixon administered the injection after consulting the physician by phone.

Although plaintiff claims there were three eyewitnesses to the events of August 23, 2001, he has provided no declarations from these witnesses to support his allegations.

None of these discrepancies represent a genuine dispute of material fact herein. Plaintiff has not articulated the length of delay between the time he was allegedly in the cell and the time he was taken to the clinic. Plaintiff has not specifically identified the harm, if any, he sustained by this alleged delay. Plaintiff has not alleged that either he returned to the clinic later or put in a sick call request because the injection he had been given had not worked. Plaintiff did not dispute defendant Dixon's statements that defendant Dixon did not refuse to treat plaintiff or that defendant Dixon "had no further involvement in providing him medical care or treatment." (Dixon Decl. at 3.)

1          Defendant Dixon states that once it was evident that plaintiff could not swallow
2   the oral Benadryl, which was not uncommon (Dixon decl. at 2), he injected plaintiff with liquid
3   Benadryl.  Although plaintiff contends this injection contained some sort of knock-out drug that
4   would make him forget what happened, it does not appear plaintiff forgot what happened and he
5   has not provided any evidence to demonstrate that the syringe contained anything except the
6   Benadryl defendant Dixon states he administered.
7          Moreover, plaintiff has not provided any evidence that his physical reactions on
8   August 23, 2001 were due to an administration of the wrong drug as opposed to plaintiff
9   experiencing side effects or complications from the psychiatric medications he ingested.  Indeed,
10  plaintiff has submitted no medical records from the date in question.  Plaintiff did append a copy
11  of a physician's orders for medication dated April 4, 2001, but plaintiff has not explained its
12  relevance.
13         Plaintiff has provided no evidence that the more appropriate medical treatment for
14  his medical complaints on August 23, 2001 was an order to have his stomach pumped.  He has
15  not provided any evidence to dispute defendant Dixon's statement that the psychiatric physician
16  on duty ordered defendant Dixon to administer Benadryl or that the administration of Benadryl in
17  these circumstances was not the usual and customary treatment.  Mere differences of opinion
18  between a prisoner and prison medical staff as to appropriate medical care also do not give rise to
19  a § 1983 claim.  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).
20         Finally, plaintiff has not provided any evidence to support his theory that
21  defendant Dixon conspired with defendant Vernon to hide this alleged incident of medical
22  malpractice.  Defendant Vernon stated he did not have any conversations or communications
23  with defendant Dixon regarding plaintiff or the allegations of plaintiff's complaint.  (Vernon
24  Decl., filed March 18, 2005, at 3.)  Defendant Vernon declared he "did not conspire with Mr.
25  Dixon to "cover up" anything nor did [he] provide nurse Dixon with any opinions or directions
26  regarding plaintiff's medical treatment."  (Id.)  Defendant Dixon declared that he "did not

conspire with anyone, including Mr. Vernon, to "cover up" anything.  All of the actions taken by [him] are documented in plaintiff's medical file.  The only person [he] spoke to regarding Mr. Turner and his symptoms was the PPOC."[2]  (Dixon Decl., filed July 27, 2005, at 2.)  Despite plaintiff's claims that there were three eyewitnesses to the events of August 23, 2001, he has provided no declarations or statements from these witnesses supporting plaintiff's theory that there was some conspiracy to cover up those events.

Based on this record,[3] this court finds that no reasonable trier of fact could conclude that defendant Dixon was deliberately indifferent to plaintiff's serious medical needs.  Summary judgment should be entered in favor of defendant Dixon

II.  Defendants Pliler and Vancor

Despite plaintiff's efforts to the contrary, plaintiff's allegations as to defendants Pliler and Vancor are based on their supervisorial roles at the institution.  The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

---

[2] PPOC stands for psychiatric physician on call.

[3] The court has reviewed plaintiff's generalized allegations that he has been transferred to four different prisons and separated from his personal and legal property.  (Pl.'s Opp'n at 4-5.)  However, plaintiff has had sufficient time to marshal evidence required to support his claims.  His original complaint was filed on March 14, 2002.  On April 7, 2003, plaintiff was advised of the evidentiary requirements demanded by a motion for summary judgment.  A discovery order issued April 29, 2004.  The instant motion for summary judgment was filed on July 27, 2005 and plaintiff did not file his opposition until April 10, 2006.

1  meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or
2  omits to perform an act which he is legally required to do that causes the deprivation of which
3  complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

4  Moreover, supervisory personnel are generally not liable under § 1983 for the
5  actions of their employees under a theory of respondeat superior and, therefore, when a named
6  defendant holds a supervisorial position, the causal link between him and the claimed
7  constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862
8  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S.
9  941 (1979). Vague and conclusory allegations concerning the involvement of official personnel
10 in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th
11 Cir. 1982).

12 Plaintiff has not demonstrated defendants Pliler or Vancor were personally
13 involved in the incidents that occurred on August 23, 2001.  Moreover, based on the court's prior
14 dismissal of defendant Vernon as well as the above recommendation that defendant Dixon be
15 granted summary judgment, it is unlikely that plaintiff could amend to state a cognizable claim
16 against defendants Pliler or Vancor.  This court will therefore recommend that defendants Pliler
17 and Vancor be dismissed as plaintiff has failed to state a cognizable claim against them.

18 In light of the above, IT IS HEREBY ORDERED that the March 17, 2006
19 findings and recommendations be vacated.

20 IT IS HEREBY RECOMMENDED that:
21 1. Defendant Dixon's July 27, 2005 motion for summary judgment be granted;
22 2. Defendants Pliler and Vancor be dismissed from this action; and
23 3. This action be dismissed.

24 These findings and recommendations are submitted to the United States District
25 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty
26 days after being served with these findings and recommendations, any party may file written

1  objections with the court and serve a copy on all parties.  Such a document should be captioned
2  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that
3  failure to file objections within the specified time may waive the right to appeal the District
4  Court's order.  <u>Martinez v. Ylst</u>, 95 1 F.2d 1153 (9th Cir. 1991).
5  DATED: June 12, 2006.

UNITED STATES MAGISTRATE JUDGE

/001; turn0543.msj